SUTHERLAND, Allen Property Custodian, et al. v. KANAWHA VALLEY BANK et al.

No. 3057.

Circuit Court of Appeals, Fourth Circuit.

April 13, 1931.

P. H. Marcum, Sp. Asst. to Atty. Gen. (James Damron, U. S. Atty., and Okey P. Keadle, Asst. U. S. Atty., both of Huntington, W. Va., and Thomas E. Rhodes, Sp. Asst. to Atty. Gen., on the brief), for appellants.

Fred O. Blue, of Charleston, W. Va. (Payne, Minor & Bouchelle and W. D. Payne, all of Charleston, W. Va., on the brief), for appellees.

Before PARKER, Circuit Judge, and WEBB and GLENN, District Judges.

WEBB, District Judge.

The appellants appealed from a decree of the District Court of the United States for the Southern District of West Virginia dated April 14, 1930, overruling the motion of the appellants to dismiss the amended bill of complaint, in which decree it was "adjudged, ordered and decreed that the defendants, Howard Sutherland, as Alien Property Custodian, and Walter O. Woods, as Treasurer of the United States, and each of them, do pay, or cause to be paid, to the plaintiffs or to their counsel of record in this cause, said sum of $21,000, together with the accrued interest thereon, less reasonable and necessary administrative expenses, to be applied and credited by said banks, plaintiffs herein, on the several bonds of the Becker Steel Company of America held and owned by said plaintiffs in the respective amounts as above set forth."

It is agreed that the statement of facts as presented by counsel for appellants in their brief is correct, and therefore the court adopts the statement, which is substantially as follows:

The complainants, appellees herein, filed their bill of complaint on March 15, 1927, the complainants being the Kanawha Valley Bank, the Charleston National Bank, and the Citizens' National Bank, under section 9 of the Trading with the Enemy Act, as amended by the Act of March 4, 1923 (42 Stat. 1511, c. 285 [50 USCA Appendix § 9 note]) against Howard Sutherland, as Alien Property Custodian of the United States, and Andrew W. Mellon, as Treasurer of the United States, Becker Steel Company of America, Reinhold Becker, Stahlwerk-Becker Actiengesellschaft, and the Title Guarantee & Trust Company, as trustee to recover an alleged debt claimed to be due and owing to the complainants out of certain moneys and other property held by the Alien Property Custodian or the Treasurer of the United States, as belonging to, or held for the account of, Stahlwerk-Becker Actiengesellschaft.

The bill of complaint alleges, among other things, that on or before July 1, 1914, the Becker Steel Company of America issued $500,000 worth of first mortgage bonds, which were secured by a deed of trust covering its entire holdings and property in the United States. The Stahlwerk-Becker Actiengesellschaft (which we shall hereafter refer to as the German corporation), for value received, guaranteed the payment of both principal and interest on these bonds. Said guaranty was indorsed upon the back of each of said bonds by William Peters, attorney in fact for the German corporation, which indorsement is as follows:

"For value received the Stahlwerk-Becker Actiengesellschaft, of Willich, Germany, hereby guarantees to the holder hereof the payment of the principal and interest mentioned in the within bond of the Becker Steel Company of America, according to the terms, covenants and conditions thereof. In witness whereof the Stahlwerk-Becker Actiengesellschaft has caused its corporate name to be signed hereto by its attorney in fact, this first day of July, 1914.
"Stahlwerk-Becker Actiengesellschaft,
"By Wm. Peters, Attorney in Fact."

Each of these bonds was certified to by the Title Guarantee & Trust Company, of New York, as trustee. The complainants, appellees here, that is, the Kanawha Valley Bank, the Charleston National Bank, and the Citizens' National Bank, became the owners and holders of certain of these bonds in the respective amounts of $5,500 each, with all coupons for interest on these bonds attached thereto, including those for July, 1926, and that the Alien Property Custodian and the Treasurer of the United States, by virtue of

a seizure under the provisions of the Trading with the Enemy Act, now hold certain moneys belonging to the German corporation, out of which said debt, if found valid, may or should be paid.

On April 6, 1927, the Title Guarantee & Trust Company, as trustee, filed its motion to dismiss and answer to the bill of complaint. Thereafter, on April 7, 1927, Howard Sutherland, as Alien Property Custodian, and Frank White, as Treasurer of the United States, filed their separate motions to dismiss and answer to the bill of complaint exhibited against them by the Kanawha Valley Bank, the Charleston National Bank, and the Citizens' National Bank, and thereafter the said Frank White was substituted in the place and stead of Andrew W. Mellon as Treasurer of the United States, and thereafter, on May 13, 1927, an order was entered by the court in the cause as follows: "This day came the complainants by counsel and tendered their amended bill in this cause, and the same is ordered filed. And it appearing that the said Alien Property Custodian and Frank White, as Treasurer of the United States, have separately and severally moved to dismiss the original bill in this cause, and no orders having been taken upon said motion to be dismissed, and the said defendants having answered said bill, on motion of the complainants the said motion and answer are hereby treated as motion and answer to the original, as well as to the amended bill, and no subpoena is required to issue thereon against the defendants, Howard Sutherland, as Alien Property Custodian, and the said Frank White, Treasurer of the United States, but nothing herein shall bar the Alien Property Custodian and the said Frank White from filing additional motion and answer to said amended bill. It is further ordered that this case be, and the same is, dismissed as to Andrew W. Mellon, Secretary of the Treasury of the United States of America."

On April 14, 1930, by stipulation between counsel, the petition of the Kanawha National Bank, of Charleston, praying that it be made a party plaintiff in this cause, was ordered to be filed, and it thereupon became a party plaintiff for the same purpose and effect as though originally a complainant in the bill, and Walter O. Woods was substituted as a party defendant in the place and stead of Frank White as Treasurer of the United States, and the complainants' original bill was ordered amended in the following respect: (1) By adding the following words to paragraph 10 of said original bill: "And they aver that all of said bonds were acquired

for the value on the ——— day of ———, 1915, and default in the payment of interest thereon was made for the first time on July 1, 1921, and that prior to October 6, 1917, all of said bonds were owing to and owned by the plaintiffs as aforesaid and the same constituted a debt of the Stahlwerk-Becker Actiengesellschaft within the meaning of Section 9 of the 'Trading with the Enemy Act' (40 Stat. as amended by Act approved June 5, 1920.)"

The court below, having heard all the facts, entered a final decree on the merits in favor of the complainants in the bill, appellees herein. This decree is dated April 14, 1930, and from this decree the Alien Property Custodian and the Treasurer of the United States have prosecuted their appeal to this court. The respondents in the original bill (now appellants) admit that the debt which the complainants seek to recover would be allowable under the provisions of section 9 (a), as limited by section 9 (e) of the Trading with the Enemy Act, 50 USCA Appendix § 9(a, e) had the default upon the part of Becker Steel Company of America in the payment of the interest on said bonds occurred prior to October 6, 1917. The record shows that the Becker Steel Company of America did not default in the payment of the interest due the appellees, the complainants, until July 1, 1924.

Counsel for appellants, in their brief, correctly state that the only question involved in this appeal is: Did the German corporation, as the guarantor of the bonds of the Becker Steel Company of America, by its act of guaranty, create a debt, such as was "owing to and owned by" the complainants prior or to October 6, 1917?

We are therefore called upon to construe the meaning of a part of section 9 (a) of the Trading with Enemy Act, which is as follows: "Any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, or to whom any debt may be owing from an enemy or ally of enemy, whose property or any part thereof shall have been conveyed, transferred, assigned, delivered or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States may file with the said Custodian a notice of his claim under oath and in such form and con-

taining such particulars as the said custodian shall require," etc.

Section 9 (e) of said act provides: "No money or other property shall be returned nor any debt allowed under this section to any person who is a citizen or subject of any nation which was associated with the United States in the prosecution of the war, unless such nation in like case extends reciprocal rights to citizens of the United States; nor in any event shall a debt be allowed under this section unless it was owing to and owned by the claimant prior to October 6, 1917," etc.

▉▉ Was the guaranty of the German corporation a debt owing to and owned by the complainants prior to October 16, 1917? We think it was. Whatever other objects the Congress may have had in passing the Trading with the Enemy Act, it can be boldly and truthfully said that its purpose was not to punish American citizens who had valid claims, debts, or obligations against alien enemies. It is also perfectly clear that Congress intended to stop trading with alien enemies after October 6, 1917. All alien enemy property was to be taken over in order to weaken the enemy, but not to injure friendly citizens of the United States, or to relieve alien enemies of just obligations.

Mr. Justice Butler, in the case of Miller v. Robertson, 266 U. S. 248, 45 S. Ct. 73, 75, 69 L. Ed. 265, tersely says: "The purpose of section 9 was to prevent or lessen losses and inconvenience liable to result to non-enemy persons. This provision is highly remedial and should be liberally construed to effect the purposes of Congress and to give remedy in all cases intended to be covered. * * * The just purpose of the section is not to be defeated by a narrow interpretation or by unnecessarily restricting the meaning of the word within technical limitations. * * * The meaning of the word 'debt,' as used in many statutes, is not restricted to demands enforceable in actions of debt. * * * There is nothing in the language of the act or the reasons for its enactment to indicate a purpose to restrict the right to institute suits in equity as authorized in section 9 to causes of action cognizable in debt under technical procedural rules. The words of a statute are to be read in their natural and ordinary sense, giving them a meaning to their full extent and capacity, unless some strong reason to the contrary appears."

We think Congress intended to use the word "debt" in the popular sense—a sense in which it is understood by the average person,

and not that restricted, technical, common-law sense in which the word debt is often used. Webster defines debt as "that which one person is bound to pay to another, or to perform for his benefit; that of which payment is liable to be exacted; due; obligation; liability."

Undoubtedly this guaranty on the part of the German corporation was an obligation or a liability. "Obligation" and "liability" are broader terms than either "guaranty" or "surety." It is admitted that, had default in the payment of the bonds taken place prior to October, 1917, the German corporation would have been required to make the bonds good out of its moneys and property.

The obligation which the German corporation entered into continued until the failure on the part of the Becker Steel Company of America, and it seems to us that the funds derived from the seizure and sale of the German corporation should be impressed with the liability or obligation of the corporation. Congress certainly never intended to destroy such an obligation or liability as this guaranty furnished, or to withdraw from the reach of citizens of this country property belonging to alien enemies which could have been subjected by such citizens to the satisfaction of claims held by them, even though liability on such claims may have been contingent at the time of the sequestration of the property. No doubt these complainant banks would never have bought the bonds in question had it not been for this guaranty of the German corporation, and it would seem to be a strained interpretation of the statute to hold that Congress intended virtually to destroy this security which the banks held from the corporation.

Whether the indorsement of the German corporation on the back of these bonds was a surety or a guaranty, it seems to us, makes no difference, since it should be construed that the indorsement called a guaranty was a valid obligation or liability, and it would be too technical to hold that this obligation cannot be enforced against an alien enemy, or the property of an alien enemy in the hands of the Custodian of Alien Property. The validity of this guaranty or liability or obligation did not depend upon the time when the Becker Steel Company of America should default.

There is no way by which the German corporation could have been relieved of its liability, except by the consent of the complainant bondholders. The default brought about the collectibility, if we might use that

expression, of the guaranty or obligation, but by no construction of language can we hold that such default constituted a "trading with the enemy." At the time of the default we believe the German corporation's property had already been taken over and probably converted by the Alien Property Custodian. We must therefore hold that this guaranty was a continuing and valid obligation on the part of the German corporation, which Congress did not intend to abrogate and which was as valid to all intents and purposes after the passage of the act of October 6, 1917, as before. We think the obligation or liability created by the guaranty on the back of each of the bonds was such a "debt" as to come within the meaning of the section of the statute in question.

The decree of the District Court is affirmed.